**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

| | | |
|---|---|---|
| **TREVELIS D JACKSON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **VS.** | : | **NO. 1:23-CV-00209-LAG-TQL** |
| | : | |
| **WARDEN BOBBITT,** *et al.*, | : | |
| | : | |
| **Defendants.** | : | |
| _____ | : | |

## ORDER AND RECOMMENDATION

In accordance with the Court's previous orders and instructions, *pro se* Plaintiff Trevelis D. Jackson has paid the required initial partial filing fee in this action.   Plaintiff's Complaint is now ripe for review pursuant to 28 U.S.C. § 1915A and § 1915(e).   Having conducted such review, Plaintiff's claims that Defendant Ward was deliberately indifferent to Plaintiff's safety with respect to the events of April 18, 2023 and his retaliation claims against Defendant Ward shall proceed for further factual development.   It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

### PRELIMINARY REVIEW OF PLAINTIFF'S COMPLAINT

**I.    Standard of Review**

The Prison Litigation Reform Act ("PLRA") obligates the district courts to conduct a preliminary screening of every complaint filed by a prisoner who seeks redress from a government entity, official, or employee.   *See* 28 U.S.C. § 1915A(a).   Screening is also

required under 28 U.S.C. § 1915(e) when the plaintiff is proceeding IFP.  Both statutes apply in this case, and the standard of review is the same.   When conducting preliminary screening, the Court must accept all factual allegations in the complaint as true.  *Boxer X v. Harris*, 437 F.3d 1107, 1110 (11th Cir. 2006) *abrogated in part on other grounds by Wilkins v. Gaddy*, 559 U.S. 34 (2010); *Hughes v. Lott*, 350 F.3d 1157, 1159-60 (11th Cir. 2003).  *Pro se* pleadings, like the one in this case, are "'held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed.'"  *Hughes*, 350 F.3d at 1160 (citation omitted).   Still, the Court must dismiss a prisoner complaint if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief."  28 U.S.C. §1915A(b).

A claim is frivolous if it "'lacks an arguable basis either in law or in fact.'"  *Miller v. Donald*, 541 F.3d 1091, 1100 (11th Cir. 2008) (citation omitted).  The Court may dismiss claims that are based on "'indisputably meritless legal'" theories and "'claims whose factual contentions are clearly baseless.'"  *Id.* (citation omitted).   A complaint fails to state a claim if it does not include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   The factual allegations in a complaint "must be enough to raise a right to relief above the speculative level" and cannot "'merely create[] a suspicion [of] a legally cognizable right of action.'"  *Twombly*, 550 U.S. at 555 (citation omitted).   In other words, the complaint must allege enough facts

"to raise a reasonable expectation that discovery will reveal evidence" supporting a claim. *Id.* at 556. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

To state a claim for relief under § 1983, a plaintiff must allege that (1) an act or omission deprived him of a right, privilege, or immunity secured by the Constitution or a statute of the United States; and (2) the act or omission was committed by a person acting under color of state law. *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995). If a litigant cannot satisfy these requirements or fails to provide factual allegations in support of his claim or claims, the complaint is subject to dismissal. *See Chappell v. Rich*, 340 F.3d 1279, 1282-84 (11th Cir. 2003).

## II.    Factual Allegations

Plaintiff's Complaint raises claims based on his recent incarceration at the Calhoun State Prison ("CSP"). Compl. 5, ECF No. 1.[1] Plaintiff contends he had "stomach problems (digestion) stained pants w/bowel movement" when he arrived at CSP intake on December 20, 2022. *Id.* Plaintiff completed a request for medical attention that day and dropped it in the collection box two days later, but he did not receive a response for two and a half months and never received any treatment. *Id.* Plaintiff also states he filed

---

[1] Plaintiff also appears to contend that he was transferred to Calhoun State Prison "in retaliation for complaining and informing Warden Aaron Pinero about multiple constitutional rights violations and possible legal action." Compl. 5, ECF No. 1. Plaintiff, however, does not appear to be raising a separate retaliation claim against any prison official at his previous prison, given that he has only named Calhoun State Prison officials as Defendants in this action. *See id.* at 4.

additional grievances because he suffered from "excess gas" that he describes as "painful," but he likewise received no response. *Id.*

At some unspecified time thereafter, Plaintiff was involved in an altercation in the F-dormitory. Compl. 5, ECF No. 1. Prison officials moved Plaintiff to the J-dormitory, and he was "robbed after a few[] days" due to "[l]ack of better patrols (presence)." *Id.* Plaintiff asked an officer to move him to a different cell, but it appears this request was refused, and Plaintiff was moved to a different cell in the J-dormitory. *See id.* Plaintiff states he was exposed to secondhand smoke in his new cell. *Id.* at 7. Plaintiff complained about being housed in a smoking cell, but his grievances were denied. *Id.*

On April 18, 2023, Plaintiff's cellmate was "raging and rambleing [sic] about child molestation while Officer Ward was standing just outside the door." Compl. 7, ECF No. 1. Plaintiff is serving a sentence for child molestation. *Id.* at 1. Plaintiff grew concerned and asked Defendant Ward if either he or his cellmate could "be removed from the room to prevent any altercation." *Id.* Defendant Ward refused, and Plaintiff's cellmate assaulted him later that evening. *Id.* Plaintiff's glasses were broken in the altercation, and it took prison officials more than six months to provide Plaintiff with new ones. *Id.*

On July 25, 2023, prison officials decided to move Plaintiff into a new cell with "an inmate that had been in a violent altercation where he'd been stabbed." Recast Compl. 8, ECF No. 1. In addition, Plaintiff contends this cell "was in hazardous condition": it was also exposed to secondhand smoke, the toilet bowl was covered in "grit and grime," the

"sink water nozzle was gummed upon with black tar," there was "trash all over floors and lockers," and the showers were "poor" and lacked hot water.  *Id.*   After about six weeks in this cell, Plaintiff "was pulled for shower and refused to go back into [the] room."  *Id.* Wardens Bobbitt and Peoples, along with Defendant Ward, escorted Plaintiff to the cage while they decided what to do about his housing.  *Id.* at 8-9.   Plaintiff contends he overheard Defendant Ward make a "child molester remark," and Defendant Ward later approached him and placed Plaintiff in a strip cell.  *Id.*   While in the strip cell, Plaintiff was required to "strip completely naked . . . with no property.   No clothes, no mattress, no supplies for a couple days."  *Id.* at 9.   Plaintiff also contends he was denied law library while he was housed in the strip cell.  *Id.*

On August 24, 2023, Plaintiff was moved from the strip cell to another cell in the J building.  Compl. 9, ECF No. 1.   Plaintiff contends Officer Marner moved Plaintiff from a single cell into a cell with another inmate who "had already been in an altercation with someone else where a weapon may have been involved."  *Id.*   After only 15 minutes in his new cell, Plaintiff's cellmate attacked him.  *Id.*   Plaintiff contends it "took a while" for prison officials to respond when he "screamed for help."  *Id.*   Plaintiff was treated for his injuries at a local hospital, and when he returned to the prison he was placed in a different cell with an inmate who had an "unstable mind."  *Id.*   Plaintiff requested to be moved several times before Officer Alexander moved Plaintiff to the cage and then to the room where Plaintiff was housed until his recent transfer to Dooly State Prison.  *Id.*; *see also* Change of Address, ECF No. 8.   Plaintiff contends Defendants' actions and omissions

5

violated his constitutional rights, and as a result he seeks compensatory, punitive, and nominal damages.   Compl. 6, ECF No. 1.

### III.    Plaintiff's Claims

   A.    <u>Medical Treatment Claims</u>

Plaintiff first suggests that prison officials at CSP failed to provide him with adequate medical care for his digestive issues and his need for prescription eyeglasses. These allegations give rise to claims that Defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment to the United States Constitution.  *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003).   To show that a state actor was deliberately indifferent to his serious medical needs, "a plaintiff must satisfy both an objective and a subjective inquiry."  *Id.*   A plaintiff must first "set forth evidence of an objectively serious medical need*"* and then prove that the defendant "acted with an attitude of 'deliberate indifference' to that serious medical need."  *Id.*   In other words, the defendant must both "know of and then disregard an excessive risk to the prisoner."  *Dunn v. Martin*, 178 F. App'x 876, 877 (11th Cir. 2006) (per curiam).   For purposes of this analysis, a "serious medical need" is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Farrow*, 320 F.3d at 1243 (internal quotation marks omitted).   A serious medical need can also arise if "a delay in treating the need worsens the condition."  *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).  "In either case, 'the medical need must be one that, if left unattended, poses a

substantial risk of serious harm.'"  *Id.* (quoting *Farrow*, 320 F.3d at 1243).

In this case, Plaintiff has failed to allege facts sufficient to show that he suffered from any serious medical needs.  At most, Plaintiff alleges that he suffered from unspecified "stomach problems" that caused him to soil himself once and that he had "excess gas" that "was painful."  Compl. 5, ECF No. 1.  He also suggests that it took Defendants more than six months to replace his prescription eyeglasses after they were broken in an altercation.  *Id.* at 7.  But Plaintiff does not flesh out these allegations with any specific facts that could show that these issues rose to the level of a serious medical need.  Therefore, these allegations—standing alone—fail to state a claim upon which relief may be granted.  *See, e.g., Brennan v. Thomas*, 780 F. App'x 813, 820 (11th Cir. 2019) (per curiam) (holding that "a plaintiff's statement that he experienced some pain or discomfort is not enough; the prisoner's pain must be objectively so severe that the failure to treat it deprives him of the minimal civilized measure of life's necessities" (internal quotation marks omitted)); *Canell v. Multnomah Cnty.*, 141 F. Supp. 2d 1046, 1057 (D. Ore. 2001) ("While severe eye injuries or legal blindness may constitute a serious medical need, that is not the case with reading glasses.").  *Cf. also Koehl v. Dalsheim*, 85 F.3d 86, 89 (2d Cir. 1996) (prisoner sufficiently alleged serious medical need for "corrective eye-glasses medically prescribed to alleviate the significant visual deficiencies of double vision and loss of depth perception" that resulted from inmate's previous head injury).  These claims should therefore be dismissed without prejudice.

Plaintiff also suggests that it took prison officials "a while to respond" after Plaintiff

7

was assaulted on August 24, 2023.   Compl. 9, ECF No. 1.   This allegation, standing alone, is likewise too vague and conclusory to state an actionable Eighth Amendment claim.   Plaintiff does not state how long it took prison officials to respond to his requests for help, explain who was responsible for any delay, or allege that the delay worsened his condition in any way.   *See Mann*, 588 F.3d at 1307.   These claims should therefore also be dismissed without prejudice.

B.   Deliberate Indifference to Safety

Plaintiff next suggests that prison officials failed to prevent him from being attacked at the prison.   *See, e.g.,* Compl. 5, ECF No. 1.   Claims that prison officials were deliberately indifferent to an inmate's safety are generally cognizable under the Eighth Amendment to the United States Constitution.   *See, e.g., Farmer v. Brennan*, 511 U.S. 825, 837 (1994).   A prisoner asserting this type of Eighth Amendment claim must allege (1) a substantial risk of serious harm; (2) the prison officials' deliberate indifference to that risk; and (3) causation.   *Goodman v. Kimbrough*, 718 F.3d 1325, 1331 (11th Cir. 2013). To establish deliberate indifference in this context, a prisoner must show that prison officials subjectively knew of the substantial risk of serious harm and that the prison officials knowingly or recklessly disregarded that risk.   *Id.* at 1332.

The subjective component of deliberate indifference requires a prisoner to allege facts showing that a prison official had "'more than a generalized awareness of risk'" to the prisoner.   *Marbury v. Warden*, 936 F.3d 1227, 1234 (11th Cir. 2019) (quoting *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1101-02 (11th Cir. 2014)).   The inmate can do

this by pleading facts showing "that he was in an environment so beset by violence that confinement, by its nature, threatened him with the substantial risk of serious harm" or by providing prison officials with details about a specific threat sufficient "to enable them to conclude that it presents a 'strong likelihood' of injury, not a 'mere possibility.'" *Id.* at 1235-36 (quoting *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015)); *see also Estate of Owens v. GEO Group, Inc.*, 660 F. App'x 763, 769 (11th Cir. 2016) (per curiam) (identifying "the particularized risk claim" and "the dangerous conditions" claim as the two theories under which inmates may seek to advance an Eighth Amendment failure-to-protect claim). The objective prong requires the prisoner to allege facts establishing that the prison official objectively "responded to the known risk in an unreasonable manner, in that he or she knew of ways to reduce the harm but knowingly or recklessly declined to act." *Marbury*, 936 F.3d 1234-35 (internal quotation marks omitted).

Plaintiff's allegations regarding these claims are difficult to decipher. As best as the Court can tell, however, Plaintiff's first claim is based on his allegation that he was robbed shortly after he arrived in the J-building and that a "[l]ack of better patrols (presence)" contributed to the robbery. Compl. 5, ECF No. 1. Though Plaintiff does not allege that prison officials had any knowledge of a specific threat regarding this attack, he could still state a claim if he pleads facts that could show "a generalized risk of violence from a prison population" coupled with "specific features of a facility or its population rendering it particularly violent." *Marbury*, 936 F.3d at 1234-35. But Plaintiff's conclusory allegation that his dormitory needed "better patrols" falls short of suggesting

that CSP was an institution in which "serious inmate-on-inmate violence was the norm or something close to it" or that "pervasive staffing and logistical issues render[ed] prison officials unable to address near-constant violence." *Id.* (internal quotation marks omitted). Plaintiff has therefore failed to state an actionable claim regarding the robbery, and any such claims are subject to dismissal.

Plaintiff also appears to raise a claim based on the specific threat posed by his cellmate on or about April 18, 2023. On that date, Plaintiff alleges Defendant Ward overheard Plaintiff's cellmate "raging and rambleing [sic] about child molestation," and as a result Plaintiff asked Defendant Ward to separate him from his cellmate "to prevent any altercation." Compl. 7, ECF No. 1. Defendant Ward refused to separate them, and Plaintiff's cellmate attacked Plaintiff later that evening. *Id.* At this early stage, Plaintiff's claims that Defendant Ward had specific knowledge of a substantial risk of serious harm to Plaintiff but failed to take any action are sufficient to proceed for further factual development.

Plaintiff next alleges that on July 25, 2023, he was placed in a cell "with an inmate that had been in a violent altercation where he'd been stabbed." Compl. 7, ECF No. 1. This allegation fails to state a constitutional claim. As an initial matter, Plaintiff has failed to allege which named Defendant was responsible for assigning Plaintiff to this cell. Plaintiff's claims could be dismissed on this ground alone. *Douglas v. Yates*, 535 F.3d 1316, 1321-22 (11th Cir. 2008) (dismissal of defendants appropriate where plaintiff failed to allege facts associating defendants with a particular constitutional violation). In

10

addition, the fact that Plaintiff's cellmate was involved in a previous altercation, standing alone, does not suggest that he posed a substantial risk of harm to Plaintiff.   *Owens*, 660 F. App'x at 767 (noting that "a prisoner's exposure to the potential for a fight does not, in and of itself, constitute a substantial risk of harm").   This is particularly true given that the cellmate was the victim, rather than the instigator, in the prior altercation.   This claim should therefore be dismissed.

Next, Plaintiff contends that on August 24, 2023, Defendant Marner placed him in a cell with another inmate who "had already been in an altercation with someone else where a weapon may have been envolved [sic]."   Compl. 7, ECF No. 1.   Plaintiff states he was attacked by this individual fifteen minutes after being placed in the cell, and he suffered injuries requiring treatment at a local hospital.   *Id.*   But even assuming Defendant Marner knew the inmate had been in some sort of previous altercation, that fact alone does not demonstrate that Defendant Marner knew the inmate posed a significant threat to Plaintiff's safety.   Before prison officials' "awareness arises to a sufficient level of culpability, there must be much more than mere awareness of [an inmate's] problematic nature."   *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).   Plaintiff does not allege any specific details about his attacker or the previous altercation that could suggest Defendant Marner knew the attacker posed a substantial risk of serious harm to Plaintiff.   *Id.* (holding that defendants' knowledge that inmate "was a 'problem inmate' with a well-documented history of prison disobedience and had been prone to violence" and was "act[ing] crazy, roaming his cell like a 'caged animal'" prior to attacking plaintiff did not establish

defendants' subjective awareness for purposes of Eighth Amendment claim); *see also* *Marbury*, 936 F.3d at 1236 (noting that "a plaintiff can establish deliberate indifference to a substantial risk of serious harm where he has given prison officials further information enabling them to conclude that the risk was substantial and not merely possible").   As such, Plaintiff has not stated a claim upon which relief may be granted, and these claims should therefore also be dismissed.

Finally, Plaintiff contends he was "placed in [the] same situation" when he returned from the hospital after being attacked on August 24, 2023 because unspecified prison officials housed Plaintiff with an individual who had an "unstable mind."   Compl. 9, ECF No. 1.   Plaintiff requested to be moved, and officers complied.   *Id.*   Again, Plaintiff fails to state a claim because does not allege which prison officials were responsible for his housing assignment upon his return from the hospital.   *Douglas*, 535 F.3d at 1321-22.   In addition, Plaintiff has alleged prison officials moved him when he complained, suggesting prison officials were not deliberately indifferent to Plaintiff's safety.   This claim should likewise be dismissed.

### C.    Conditions of Confinement

Plaintiff also alleges that the conditions of his confinement violated his constitutional rights.   "The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment[.]"   *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation

marks and citations omitted).   To state a conditions-of-confinement claim, a prisoner must therefore show that the deprivations he suffers are objectively and sufficiently "serious" or "extreme" so as to constitute a denial of the "minimal civilized measure of life's necessities." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010).   This standard is only met when the challenged conditions pose "an unreasonable risk of serious damage to [the prisoner's] future health or safety," *Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004) (internal quotation marks omitted), or if society "considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk," *Helling v. McKinney*, 509 U.S. 25, 36 (1993). A prisoner must also show that prison officials had the requisite state of mind, *i.e.*, that the officials knew of the excessive risk to inmate health or safety and disregarded that risk. *See Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999).

Plaintiff first contends he was exposed to secondhand smoke, "grit and grime" that resembled "mold or mildew in toilet bowl," a "sink water nozzle [that] was gummed up with black tar," "trash all over floors and lockers," and "poor showers" with no hot water. Compl. 8, ECF No. 1.   But Plaintiff has not alleged facts sufficient to show that these conditions posed a significant danger to his present or future health.   At most, it appears that Plaintiff was exposed to a smoky or dirty cell for approximately six weeks, and he does not allege that this exposure caused him any physical symptoms other than mere discomfort.   Compl. 8-9, ECF No. 1.   Courts have found that such conditions do not rise to the level of a constitutional violation.   *See, e.g., Morefield v. Brewton*, 442 F. App'x

425, 427 (11th Cir. 2011) (per curiam) (finding that prisoner had "not shown that he was exposed to sufficiently 'grave' levels of [secondhand smoke] to constitute a violation of the Eighth Amendment" in part because he spent only two months in a building with allegedly high levels of secondhand smoke); *Richardson v. Spurlock*, 260 F.3d 495, 497-98 (5th Cir. 2001) (affirming dismissal of Eighth Amendment claims as frivolous where prisoner claimed exposure to secondhand smoke during bus rides to and from work assignments caused him to "gasp for breath," suffer from nausea, and "allegedly aggravated his 'existing medical conditions such as high blood pressure, blood clotting, edema, arthritis, tumors, etcetera'"); *see also Maxie v. Bruemmer*, 671 F. App'x 392, 392 (7th Cir. 2016) (affirming grant of summary judgment on Eighth Amendment claims where prisoner failed to produce "evidence from which a jury reasonably could find that asbestos or mold, if present in the shower area, were 'objectively severe or posed a serious risk of substantial harm'"); *Castarphen v. Gillespie*, Civil Action No. 1:22-00412-JB-N, 2023 WL 5154687, at *9 n.3 (S.D. Ala. Aug. 10, 2023) (collecting cases for the proposition that "courts have repeatedly determined the exposure to mold, without more, does not state conditions so horrific that they could be considered inhumane"); *Jordan v. Franks*, No. CV410-164, 2010 WL 4007641, at *2 (S.D. Ga. Aug. 30, 2010) (finding that prisoner did not allege that prison officials were deliberately indifferent to his present or future health where inmate did not allege that exposure to mold led to illness or injury, that mold was toxic, or that he was "exposed to sufficient quantities such that continued exposure may lead to serious future harm").   Plaintiff has therefore failed to allege that these conditions

of his confinement—even if unpleasant—were objectively severe enough to rise to the level of a constitutional violation.

Plaintiff also alleges he was placed in a strip cell with "no clothes, no mattress, no supplies for a couple days."   Compl. 9, 11, ECF No. 1.   These allegations likewise fail to state a constitutional claim, particularly in the absence of any allegation that Plaintiff suffered anything more than discomfort.  *Turner v. Warden*, 650 F. App'x 695, 701-02 (11th Cir. 2016) (per curiam) (prisoner who "was left in strip cell for ten days without clothing" could not prevail on Eighth Amendment claim where there was "no evidence that he faced any serious harm" or "experienced anything more than mere discomfort"); *O'Connor v. Kelley*, 644 F. App'x 928, 930, 932 (11th Cir. 2016) (per curiam) (prisoner who was placed in strip cell for "'longer than 72 hours (weeks)' . . . without a blanket, mattress, or bed and with only a 'suicide shroud' to wear" failed to state Eighth Amendment claim).   These claims should also be dismissed.

D.    Access to Courts

Plaintiff also briefly mentions that he was denied access to the law library while he was in the strip cell.   Plaintiff may thus be attempting to raise an access-to-courts claim. "Access to the courts is clearly a constitutional right, grounded in the First Amendment, the Article IV Privileges and Immunities Clause, the Fifth Amendment, and/or the Fourteenth Amendment."  *Chappell v. Rich*, 340 F.3d 1279, 1282 (11th Cir. 2003) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002)).   "To have standing to seek relief under this right, however, a plaintiff must show actual injury by 'demonstrat[ing] that a

nonfrivolous legal claim ha[s] been frustrated or . . . impeded.'" *Jackson v. State Bd. of Pardons & Paroles*, 331 F.3d 790, 797 (11th Cir. 2003) (alterations and omission in original) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996)).   In other words, "[t]he injury requirement means that the plaintiff must have an underlying cause of action the vindication of which is prevented by the denial of access to the courts."   *Cunningham v. Dist. Attorney's Office for Escambia Cnty.*, 592 F.3d 1237, 1271 (11th Cir. 2010).   In this case, Plaintiff does not explain how the temporary denial of access to the prison's law library prevented him from vindicating a nonfrivolous legal claim.   Because Plaintiff has therefore failed to allege that he suffered an "actual injury," any access-to-courts claim based on a temporary denial of law library access should also be dismissed without prejudice.

E.    Retaliation Claims

Plaintiff next alleges that Defendant Ward attempted to force him into a cell that contained secondhand smoke.   Compl. 11, ECF No. 1.   Plaintiff refused to enter the cell and "informed them of [his] legal pursuits."   *Id.*   Defendant Ward then placed Plaintiff into a strip cell and made a "child molestation comment."   *Id.*   Plaintiff also notes that he had previously filed a grievance against Defendant Ward.   *Id.*   While Plaintiff was in the strip cell, he noticed that Defendant Ward would provide some supplies to other inmates, but he did not provide any supplies to Plaintiff.   *Id.*   Plaintiff thus contends Defendant

Ward was retaliating against him.   *Id.*[2]

To state a retaliation claim, an inmate generally needs to show that he engaged in protected conduct; that the prison official's retaliatory conduct adversely affected the protected conduct; and a causal connection between the protected conduct and the adverse action.   *See, e.g., Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011).   Plaintiff has pleaded facts sufficient to show that he engaged in protected conduct by filing grievances and lawsuits, and his placement in a strip cell could constitute an adverse action.   Plaintiff also alleges that Defendant Ward acted "unreasonabl[y]" by assigning Plaintiff to a strip cell, made arguably negative comments about Plaintiff's conviction, and treated Plaintiff less favorably than other individuals in strip cells.   Compl. 11, ECF No. 1.   At this early stage, the Court therefore cannot say that Plaintiff's retaliation claims against Defendant Ward are necessarily frivolous, and they shall proceed for further factual development.

## F.   Equal Protection Claims

Plaintiff further suggests that Defendant Ward violated Plaintiff's equal protection rights by "placing [him] at an unreasonable risk for harm" "based on a suspect classification."   Compl. 11, ECF No. 1.   To the extent Plaintiff intends for these allegations to set forth a separate equal protection claim, they do not.   The Equal

---

[2] Plaintiff states that Defendants Bobbitt and Peoples may have discussed where to house Plaintiff after Plaintiff refused to go back into his cell, but Plaintiff also appears to allege that it was Defendant Ward who placed him in the strip cell, and Plaintiff does not appear to assert a retaliation claim against Defendants Bobbitt or Peoples.   Compl. 11, ECF No. 1.

Protection Clause of the Fourteenth Amendment provides: "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."   U.S. Const. amend. XIV. In order to state an equal protection claim, a plaintiff must allege that similarly situated persons—or "comparators"—have been treated disparately through state action.   *Williams v. Sec'y for Dep't of Corr.*, 131 F. App'x 682, 685-86 (11th Cir. 2005) (per curiam); *see also Campbell v. Rainbow City, Ala.*, 434 F.3d 1306, 1314 (11th Cir. 2006).   In this case, Plaintiff does not explain how he is a member of a "suspect class," nor does he allege facts sufficient to show that any similarly situated person was treated differently than he was. Plaintiff has therefore failed to state a claim upon which relief may be granted.   *See, e.g., Williams*, 131 F. App'x at 687 (affirming dismissal of equal protection claims where plaintiff "failed to allege facts showing that any other specific inmate" had been treated differently than plaintiff).   Moreover, to the extent Plaintiff is seeking to raise claims that Defendant Ward was deliberately indifferent to Plaintiff's health or safety, those claims are properly raised under the Eighth Amendment, as discussed above.   Any equal protection claims Plaintiff seeks to raise in this action should therefore be dismissed.

      G.   <u>Grievances</u>

Finally, Plaintiff suggests that prison officials ignored his requests for grievances. Compl. 10, ECF No. 1.   To the extent Plaintiff contends this violated his due process rights, he has failed to state an actionable claim.[3]   Plaintiff does not have any due process

---

[3] Plaintiff also appears to allege that prison officials' failure to respond to his grievances was "discrimination based on 'suspect classifications' as well as retaliation," Compl. 10,

right to access a prison's grievance procedure or have those procedures properly followed. *See, e.g., Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (per curiam) (affirming dismissal of prison's claims that he was denied use of the prison's grievance procedure); *Dunn v. Martin*, 178 F. App'x 876, 878 (11th Cir. 2006) (per curiam) (prison officials' failure to respond to prisoner's letters and grievances and to follow prison regulations regarding grievance responses did not implicate due process concerns). Any such claims Plaintiff is attempting to raise in this action should therefore be dismissed without prejudice.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's claims that Defendant Ward was deliberately indifferent to Plaintiff's safety in relation to the April 18, 2023 attack and his retaliation claims against Defendant Ward shall proceed for further factual development. It is **RECOMMENDED**, however, that Plaintiff's remaining claims be **DISMISSED without prejudice.**

## OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to these recommendations with the Honorable Leslie A. Gardner, United States District Judge, **WITHIN FOURTEEN (14) DAYS** after being served with a copy of this

---

ECF No. 1, but he does not allege who specifically ignored which grievances. Any claims that prison officials retaliated against him or violated his equal protection rights by ignoring his grievances should be dismissed on this ground. *Douglas*, 535 F.3d at 1321-22.

Recommendation.  Any objection is limited in length to **TWENTY (20) PAGES**.  *See* M.D. Ga. L.R. 7.4.  The parties may seek an extension of time in which to file written objections, provided a request for an extension is filed prior to the deadline for filing written objections.  Failure to object in accordance with the provisions of § 636(b)(1) waives the right to challenge on appeal the district judge's order based on factual and legal conclusions to which no objection was timely made.  *See* 11th Cir. R. 3-1.

## ORDER FOR SERVICE

Having found that Plaintiff has made colorable constitutional violation claims against Defendant Ward, it is accordingly **ORDERED** that service be made on that Defendant and that they file an Answer, or such other response as may be appropriate under Rule 12, 28 U.S.C. § 1915, and the Prison Litigation Reform Act.  Defendant is reminded of the duty to avoid unnecessary service expenses, and of the possible imposition of expenses for failure to waive service pursuant to Rule 4(d).

## DUTY TO ADVISE OF ADDRESS CHANGE

During the pendency of this action, all parties shall keep the Clerk of this Court and all opposing attorneys and/or parties advised of their current address.  Failure to promptly advise the Clerk of a change of address may result in the dismissal of a party's pleadings.

## DUTY TO PROSECUTE ACTION

Plaintiff is also advised that he must diligently prosecute his Complaint or face the possibility that it will be dismissed under Rule 41(b) of the Federal Rules of Civil Procedure for failure to prosecute.  Defendant is similarly advised that he or she is

expected to diligently defend all allegations made against them and to file timely dispositive motions as hereinafter directed. This matter will be set down for trial when the Court determines that discovery has been completed and that all motions have been disposed of or the time for filing dispositive motions has passed.

## FILING AND SERVICE OF MOTIONS, PLEADINGS, AND CORRESPONDENCE

It is the responsibility of each party to file original motions, pleadings, and correspondence with the Clerk of Court. A party need not serve the opposing party by mail if the opposing party is represented by counsel. In such cases, any motions, pleadings, or correspondence shall be served electronically at the time of filing with the Court. If any party is not represented by counsel, however, it is the responsibility of each opposing party to serve copies of all motions, pleadings, and correspondence upon the unrepresented party and to attach to said original motions, pleadings, and correspondence filed with the Clerk of Court a certificate of service indicating who has been served and where (i.e., at what address), when service was made, and how service was accomplished.

## DISCOVERY

Plaintiff shall not commence discovery until an answer or dispositive motion has been filed on behalf of the Defendant from whom discovery is sought by the Plaintiff. The Defendant shall not commence discovery until such time as an answer or dispositive motion has been filed. Once an answer or dispositive motion has been filed, the parties are authorized to seek discovery from one another as provided in the Federal Rules of Civil

Procedure.   The deposition of the Plaintiff, a state/county prisoner, may be taken at any time during the time period hereinafter set out provided prior arrangements are made with his custodian.   **Plaintiff is hereby advised that failure to submit to a deposition may result in the dismissal of his lawsuit under Rule 37 of the Federal Rules of Civil Procedure.**

IT IS HEREBY ORDERED that discovery (including depositions and the service of written discovery requests) shall be completed within 90 days of the date of filing of an answer or dispositive motion by the Defendant (whichever comes first) unless an extension is otherwise granted by the court upon a showing of good cause therefor or a protective order is sought by the defendant and granted by the court.   This 90-day period shall run separately as to Plaintiff and Defendant beginning on the date of filing of Defendant's answer or dispositive motion (whichever comes first).   The scheduling of a trial may be advanced upon notification from the parties that no further discovery is contemplated or that discovery has been completed prior to the deadline.

Discovery materials shall not be filed with the Clerk of Court.   No party shall be required to respond to any discovery not directed to him/her or served upon him/her by the opposing counsel/party.   The undersigned incorporates herein those parts of the **Local Rules** imposing the following limitations on discovery:   except with written permission of the court first obtained, **interrogatories** may not exceed TWENTY-FIVE (25) to each party, **requests for production of documents and things** under Rule 34 of the Federal Rules of Civil Procedure may not exceed TEN (10) requests to each party, and **requests**

**for admissions** under Rule 36 of the Federal Rules of Civil Procedure may not exceed FIFTEEN (15) requests to each party.    No party shall be required to respond to any such requests which exceed these limitations.

### REQUESTS FOR DISMISSAL AND/OR JUDGMENT

The Court shall not consider requests for dismissal of or judgment in this action, absent the filing of a motion therefor accompanied by a brief/memorandum of law citing supporting authorities.   Dispositive motions should be filed at the earliest time possible, but in any event no later than one hundred - twenty (120) days from when the discovery period begins unless otherwise directed by the Court.

**SO ORDERED AND RECOMMENDED** this 28th day of February, 2024.

s/ ***Thomas Q. Langstaff***
United States Magistrate Judge